[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-14498

_____

D. C. Docket No. 04-00059-CR-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROGER V. EVANS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 16, 2007)**

Before DUBINA and WILSON, Circuit Judges, and CORRIGAN,[*] District Judge.

WILSON, Circuit Judge:

Roger V. Evans ("Evans") appeals his conviction and life sentence upon a

_____

[*] Honorable Timothy J. Corrigan, United States District Judge for the Middle District of Florida, sitting by designation.

guilty plea for (1) threatening to use a weapon of mass destruction against federal government property in violation of 18 U.S.C. § 2332a(a)(3); (2) mailing a threatening communication in violation of 18 U.S.C. § 876(c); and (3) interfering with a federal officer in violation of 18 U.S.C. § 111(a). Prior to his plea, the government filed an enhancement information under 18 U.S.C. § 3559, seeking mandatory life imprisonment in connection with the first count, threatening government property with a weapon of mass destruction in violation of § 2332a(a)(3).[1] Evans' lawyer withdrew at the sentencing hearing, and the district court allowed Evans to proceed without counsel. The district court sentenced Evans concurrently to life on the first count (threatening government property with a weapon of mass destruction), 120 months on the second count (mailing a threatening communication), and 96 months on the third count (interfering with a federal officer), to be served consecutively to his pre-existing state sentence and followed by five years of supervised release.[2] Evans now challenges the district court's acceptance of his guilty plea, the district court's decision to allow him to

---

[1] The government admits that, while it could have, it did not seek a sentencing enhancement in connection with the second count, mailing a threatening communication in violation of § 876(c). Because the defendant was not notified of the possibility of such an enhancement at his plea hearing and the district court did not impose an enhanced sentence for that count, we do not discuss whether the conduct charged in the second count would qualify under § 3559.

[2] The district court also imposed a $300 special monetary assessment and ordered Evans to pay $827.50 in restitution.

represent himself at sentencing, and the district court's application of the sentencing enhancement. We affirm Evans' conviction, but vacate his sentence as to the first count. The district court improperly applied the enhancement statute because the charged conduct—i.e., threatening to use a weapon of mass destruction against federal government property—does not constitute a "serious violent felony" within the meaning of § 3559(c)(2)(F).

## I. Background

In April 2004, Evans mailed a letter to the federal courthouse in Pensacola, Florida, addressed to the Clerk of the United States District Court. The letter, entitled "Affidavit in Support of Anthrax Scare," referenced anthrax three times and contained a harmless powder that resembled anthrax. The receipt of Evans' letter disrupted both the Clerk's Office and the U.S. Marshals' Office. Several employees were isolated for up to ten hours, including two Clerk's Office employees who went to the hospital and had their blood drawn to confirm they were not exposed to anything dangerous. Evans, who was already serving a state sentence in excess of 100 years, had sent the anthrax hoax with the goal of being transferred to a federal prison.

## A.  Plea Hearing

In December 2004, Evans pled guilty to all counts. At the plea hearing, the

3

district judge read Evans the indictment.[3]  Evans testified that he understood the

three charges, had read his plea agreement, and had gone over the agreement with

his attorney.  The judge explained the possible penalties for the charges, including

the enhancement.[4]  Evans indicated that he understood the sentencing implications

and reserved his right to challenge the applicability of the enhancement.  The judge

questioned Evans about the factual basis of his plea.  She asked him why he was

pleading guilty and to describe what he had done.  Evans testified, "I did it."  He

later explained, "I wrote the letter and sent it to the courts."  Evans also admitted

---

[3] The indictment charged Evans with:
    (1) "intentionally and knowingly threaten[ing] to use a weapon or weapons of mass destruction, namely anthrax, against property that is owned, leased or used by the United States or by a department or agency of the United States, that is, United States District Court Clerk's Office," 18 U.S.C. § 2332a(a)(3);
    (2) "knowingly caus[ing] to be delivered by the United States Postal Service a written communication, addressed to the Clerk of the Court, U.S. District Court, . . . Pensacola, FL . . . , which contained a threat to injure the person of the addressee or another, specifically President George W. Bush, Florida Governor Jeb Bush, and the personnel within the United States District Court Clerk's Office, Pensacola, Florida," 18 U.S.C. § 876(c); and
    (3) "knowingly and forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with [a] Deputy United States Marshal . . . , while she was engaged in or on account of the performance of her official duties," 18 U.S.C. § 111(a).

[4] The government filed a § 3559(c) enhancement information, seeking life imprisonment, under the first count of the indictment only.  The enhancement statute mandates life imprisonment for certain violent felons.  In this case, the government alleged that Evans had been convicted of two or more "serious violent felonies."  Section 3559(c) defines a "serious violent felony," in pertinent part, as:

> any . . . offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense . . . .

18 U.S.C. § 3559(c)(2)(F)(ii).

4

that he placed the powder in the envelope and that, although not his intention, he had threatened the Clerk's Office employees. After the prosecutor read the elements of the first count, the court further inquired into Evans' intent by asking, "Do you agree with me, sir, that what you did was intentionally threaten?" Evans replied, "Yes, ma'am. That's what the law says." The court also addressed Evans regarding the elements of the third count (interfering with a federal officer). The court concluded that there was a sufficient factual basis to support a guilty plea on all three counts.

## B.    Sentencing

Despite the judge's determination at the plea hearing, the court later asked the parties to brief whether there was a factual basis to support a conviction under § 2332a(a)(3) for threatening to use a weapon of mass destruction against federal government property. The court questioned whether anthrax could be a threat against property as opposed to against a person. The court further questioned the application of the § 3559(c) enhancement to an offense against a building rather than against a person.

After the issues had been briefed, Evans' attorney moved to withdraw. The court took up the motion at Evans' sentencing hearing. At the beginning of the hearing, Evans' attorney explained that he had received threatening letters from

5

Evans and Evans had indicated an intent to commit further crimes. The government opposed counsel's motion to withdraw, arguing that current counsel was in the best position to understand the sentencing arguments and delay would only increase Evans' time in federal custody. Evans addressed the court and stated that he did not want his current counsel to represent him, did not want delay, and wanted to proceed with his sentencing without the help of an attorney.

The court explained to Evans that if he wished to waive his Sixth Amendment right to counsel the court had to ensure that he was informed of the consequences of that decision. Upon questioning, Evans indicated that he understood that (1) he had a right to counsel, appointed if necessary, at all stages; (2) his sentencing might involve law and procedural issues best handled by an attorney; and (3) he could face a potential life sentence and be required to serve his state sentence before his federal sentence. The court also inquired into Evans' knowledge of the law. Evans characterized himself as "basically a paralegal" because he knew how to file motions to "get people back in courts" and how to do legal research into state law. He admitted that he had no formal legal education but testified that he was trained by other inmates and paralegals. The court reiterated that the sentencing hearing could be continued and new counsel appointed, but Evans responded, "I wish not that. I wish to go ahead and get it over with now."

The court inquired into whether Evans was taking any medication at the time and whether his decision was completely voluntary. The court then allowed Evans to represent himself.

The court concluded that § 2332a did not require a future threat and that, although no case law was directly on point, a letter threatening to use a weapon of mass destruction against government property would include threats to those within that building as well. The court found Evans' plea valid. With respect to § 3559(c), the court determined that the enhancement did apply to mailing a letter containing a threat of anthrax given the nature of anthrax, the panic associated with such a threat, and the potential for physical harm as a result.

## II. Analysis

First, we examine whether there was a sufficient factual basis for Evans' guilty plea as to the first and second counts of the indictment. Next, we ask whether the district court conducted a sufficient inquiry under *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), to allow Evans to represent himself at sentencing. Finally, we evaluate the application of the § 3559(c) enhancement to a conviction under § 2332a(a)(3) for threatening to use a weapon of mass destruction against federal government property.

### A. Factual Basis for Counts One and Two

Evans alleges both a due process violation and a Rule 11 violation based on the district court's acceptance of his guilty plea for threatening to use a weapon of mass destruction against federal government property (Count One) and mailing a threatening communication (Count Two). *See* U.S. Const. amend. V; Fed. R. Crim. P. 11.

### 1. Standard of Review

We review Evans' claim that there was an insufficient factual basis for his guilty plea as to Counts One and Two for plain error because Evans did not raise his due process argument or object to a Rule 11 violation in the district court. *See United States v. Moriarty*, 429 F.3d 1012, 1018-19 (11th Cir. 2005) (per curiam) (applying plain error standard where the defendant failed to raise constitutional and Rule 11 claims below).

> To establish plain error, a defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, we may exercise our discretion to recognize a forfeited error, but only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings. Under plain error review, the defendant bears the burden of persuasion with respect to prejudice or the effect on substantial rights. When neither the Supreme Court nor this Court has resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue.

*Id*. at 1019 (internal quotations and citations omitted) (alteration in original).

Furthermore, "a defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must

8

show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83, 124 S. Ct. 2333, 2340, 159 L. Ed. 2d 157 (2004).

## 2.    Due Process

Evans argues that the district court misinterpreted the requirements of 18 U.S.C. § 2332a and 18 U.S.C. § 876(c). Evans asserts that, because of the court's misinterpretation, he did not understand the statutory elements to which he was pleading guilty. Consequently, he contends that his plea was "unintelligent."

The dispute centers on whether the "threatens to use" language of § 2332a[5] and "threat to injure" language of § 876(c)[6] includes only future threats, as Evans posits, or whether it also includes immediate threats of harm. While this Court has

---

[5] Section 2332a states, in pertinent part:
A person who, without lawful authority, uses, *threatens*, or attempts or conspires *to use*, a weapon of mass destruction . . . against any property that is owned, leased or used by the United States or by any department or agency of the United States . . . shall be imprisoned for any term of years or for life . . . .
18 U.S.C. § 2332a(a)(3) (emphasis added).

[6] Section 876 states, in pertinent part:
Whoever knowingly so deposits or causes to be delivered [by the United States Postal Service] any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any *threat to injure* the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both. If such a communication is addressed to a United States judge, a Federal law enforcement officer, or [certain other federal officers or employees], the individual shall be fined under this title, imprisoned not more than 10 years, or both.
18 U.S.C. § 876(c) (emphasis added).

9

not specifically addressed the language of these two statutes, the Second, Third, and Fifth Circuits have looked at the issue, and all three found that a future threat is not necessary. *See United States v. Davila,* 461 F.3d 298, 304 (2d Cir. 2006) (holding that neither § 2332a nor § 876 requires a threat of future action); *United States v. Zavrel*, 384 F.3d 130, 136 (3d Cir. 2004) (expressing agreement with the district court's jury instruction that § 876 included both a future and a current intent to inflict injury); *United States v. Reynolds*, 381 F.3d 404, 406 (5th Cir. 2004) (holding that a threat under § 2332a does not require reference to a future act). We agree with our sister circuits that the language in these statutes simply does not suggest a temporal limitation to only future actions. Therefore, we find no error in the district court's interpretation of § 2332a and § 876(c). Furthermore, even if the district court did misinterpret the statutes, the district court's error would not be plain. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it.").

### 3. Rule 11

Because we find that the district court did not plainly misinterpret the statutes at issue, Evans is unable to establish a reasonable probability that, but for

the alleged error, he would not have entered his plea. Rule 11 requires the court to ensure that the defendant understands the charges and the consequences of the plea and that the defendant has not been coerced into the plea. *See* Fed. R. Crim. P. 11. Evans asserts that if the court itself was confused about the elements of the charges, Evans could not possibly have understood the elements either. We find no error in the court's understanding of the elements of the charges, and from our review of the record, Evans seems to have knowingly and voluntarily entered his plea. Thus, we find no Rule 11 violation.

Accordingly, we affirm the district court's acceptance of Evans' guilty plea at to Counts One and Two because there was a sufficient factual basis to support his conviction.[7]

## B. Evans' Self-Representation at Sentencing

Next, Evans asserts that his Sixth Amendment right to counsel was violated when the district court failed to conduct a sufficient inquiry to ensure that he was capable of representing himself at sentencing and comprehended the risks of self-representation.

### 1. Standard of Review

---

[7] To the extent that Evans argues that his conduct did not meet the elements of the charges, he waived this argument with his plea. *See United States v. Viscome*, 144 F.3d 1365, 1370 (11th Cir. 1998) (explaining that a guilty plea results in a waiver of all non-jurisdictional defects and a sufficiency of the evidence challenge is non-jurisdictional).

Whether Evans validly waived his right to counsel at his sentencing is a mixed question of law and fact, which we review *de novo*. *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995). "On direct appeal, the government bears the burden of proving the validity of the waiver." *Id.*

### 2. *Faretta* Inquiry

A criminal defendant has a constitutional right to represent himself "when he knowingly, voluntarily, and intelligently elects to do so." *Id.* For a waiver of the Sixth Amendment right to be valid, the defendant "must clearly and unequivocally assert [his] right of self-representation." *Fitzpatrick v. Wainwright*, 800 F.2d 1057, 1064 (11th Cir. 1986). Before the court grants the defendant's request, the court must make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his decision is made with his eyes open." *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541 (internal quotation marks omitted).

To determine whether Evans' waiver was knowing and intelligent, we look to "the particular facts and circumstances of [his] case, including [his] background, experience, and conduct." *Fitzpatrick*, 800 F.2d at 1065. In *Fitzpatrick*, we identified various factors that aid us in our analysis of the validity of the

12

defendant's Sixth Amendment waiver.[8]  *Id.* at 1065-67.  The government argues,

and we agree, that the *Fitzpatrick* factors support the district court's finding that

Evans validly waived his right to counsel at his sentencing hearing.  The district

court adequately warned Evans of the dangers of self-representation and reiterated

that it would appoint a new attorney for sentencing purposes if Evans so desired.

Evans unequivocally stated that he did not want an attorney to represent him at the

hearing.  The exchange between Evans and the district judge makes it clear that the

court conducted a sufficient inquiry under *Faretta* to allow Evans to represent

himself at sentencing.  In sum, Evans made the decision to waive his right to

counsel "with his eyes open."  *See Faretta* 806 U.S. at 835, 95 S. Ct. at 2541.

Consequently, we affirm the district court on this issue.

## C.    Section 3559(c) Enhancement

Lastly, Evans argues that the § 3559(c) enhancement does not properly

apply to his conviction under § 2332a(a)(3).  This issue requires us to engage in an

exercise of statutory interpretation.  Because we find that an anthrax threat to a

---

[8] These factors include the defendant's (1) age, education, and mental/physical health; (2) prior contact with an attorney in preparation for the proceeding at issue; (3) knowledge of the nature of the charges and possible defenses and penalties; (4) knowledge of the rules of procedure, evidence, and courtroom decorum; (5) previous experience with criminal trials; and (6) access to appointed, stand-by counsel. *Fitzpatrick*, 800 F.2d at 1065-67.  We also look at (7) "whether the exchange between the defendant and the court consisted merely of pro forma answers to pro forma questions"; (8) "whether the waiver was a result of coercion or mistreatment of the defendant "; and (9) "whether the defendant was attempting to delay or manipulate the proceedings."  *Id.* at 1067.

federal building does not "by its nature, involve[] a substantial risk that physical force against the person of another may be used in the course of committing the offense," § 3559(c)(2)(F)(ii), we conclude that the district court erred in applying the enhancement under the first count of the indictment.

### 1. Standard of Review

Whether a violation of § 2332a(a)(3) qualifies as a serious violent felony for purposes of a sentencing enhancement under § 3559(c) is a question of statutory construction, which we review *de novo*. *See United States v. Johnson*, 399 F.3d 1297, 1298 (11th Cir. 2005) (per curiam).

### 2. Serious Violent Felony Within the Meaning of § 3559(c)(2)(F)

Section 3559(c) mandates a life sentence for certain violent felons:

> Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if . . . the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of . . . 2 or more serious violent felonies . . . .

§ 3559(c)(1)(A)(i).

Evans does not dispute that he has two prior convictions which constitute serious violent felonies for purposes of § 3559(c); however, he asserts that his current conviction under § 2332a(a)(3) does not meet the definition of a serious violent felony set forth in § 3559(c)(2)(F).

14

The statute explains that:

> the term "serious violent felony" means––
>     (i) a Federal or State offense, by whatever designation and wherever committed, consisting of murder . . . ; manslaughter other than involuntary manslaughter . . . ; assault with intent to commit murder . . . ; assault with intent to commit rape; aggravated sexual abuse and sexual abuse . . . ; abusive sexual contact . . . ; kidnapping; aircraft piracy . . . ; robbery . . . ; carjacking . . . ; extortion; arson; firearms use; firearms possession [in connection with a crime of violence or a drug trafficking crime]; or attempt, conspiracy, or solicitation to commit any of the above offenses; and
>     (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense . . . .

§ 3559(c)(2)(F).

Evans was convicted under § 2332a(a)(3) for threatening to use a weapon of mass destruction against federal property. Notably, the government charged Evans under subsection (a)(3) for threatening property, and not under subsection (a)(2), which covers threats to a person. During sentencing, the court did not definitively state under which subpart of § 3559(c)(2)(F) she thought Evans' conviction fit. Subpart (F)(i) enumerates a series of felonies and cross-references the applicable U.S. Code sections. Subpart (F)(ii), however, is more open-ended in its definition.

The government concedes, and we agree, that § 3559(c)(2)(F)(i) does not encompass threatening to use a weapon of mass destruction against federal

15

property, given that this crime does not appear in the list of applicable offenses. The first half of subpart (F)(ii) does not apply in this case either because the offense to which Evans pled guilty does not have "as an *element* the use, attempted use, or threatened use of physical force against *the person of another*." § 3559(c)(2)(F)(ii) (emphasis added). Under the offense charged, the only force threatened was against property, not against a person.[9] *See* § 2332a(a)(3). Consequently, we focus on the second half of subpart (F)(ii) and decide whether threatening to use a weapon of mass destruction against federal property "by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." § 3559(c)(2)(F)(ii). Because the risk of physical harm presented by threatening a federal building with anthrax is "not the natural outcome of an illegal use of force," *Johnson*, 399 F.3d at 1301 (discussing *Leocal v. Ashcroft*, 543 U.S. 1, 125 S. Ct. 377, 160 L. Ed. 2d 271 (2004)), we hold that threatening to use a weapon of mass destruction against federal property is not a "serious violent felony" within in the meaning of § 3559(c)(2)(F).

---

[9] If the government had charged Evans under § 2332a(a)(2) for threatening to use a weapon of mass destruction against a person and the district court had accepted his guilty plea to that charge, then the conviction would have qualified as a "serious violent felony" under the first half of § 3559(c)(2)(F)(ii). The government, however, chose to charge Evans under a different subsection.

In making this determination, we consider the extent to which the charged conduct[10] poses a risk that physical force against another person may be used in the course of committing the offense. The government presents two examples of physical force which may result as a consequence of threatening a federal building with anthrax: (1) arterial blood draws which medical personnel may perform on potentially exposed employees and (2) general physical force that law enforcement officers may employ in an effort "to evacuate and secure the property and/or catch the person who made the threat." Appellee's Br. at 52. These examples, however, do not account for the statutory requirement that the physical force against another person "be used *in the course of committing the offense*." § 3559(c)(2)(F)(ii) (emphasis added). We acknowledge that there is *some* risk that a threat against a federal building may result in a person using some amount of physical force against another person at some point after the threat is communicated. If we were to follow the logic of the government, however, virtually every crime punishable by a maximum term of 10 years or more would qualify as a serious violent felony under § 3559(c)(2)(F)(ii) because there is always *some* risk that the police will use physical force on another while trying to "catch" a suspected criminal. The language of the statute, which requires that the offense "*by its nature*, involve[] a

---

[10] *See supra* note 3 (first count).

17

*substantial* risk that physical force against the person of another may be used *in the course of committing the offense*," does not allow for such a reading of the term "serious violent felony." *Id.* (emphasis added).

We find support for this approach in the Supreme Court's analysis in *Leocal*, 543 U.S. 1, 125 S. Ct. 377. In that case, the Supreme Court determined that driving under the influence of alcohol ("DUI") and causing serious bodily injury in an accident, in violation of Florida law, is not a "crime of violence" within the meaning of 18 U.S.C. § 16. *Id.* at 10, 125 S. Ct. at 382. Under the Immigration and Nationality Act, an alien may be deported if he is convicted of an aggravated felony, which includes certain "crimes of violence" as defined in § 16. In *Leocal*, the Supreme Court considered whether DUI properly fits into the category of offenses described in § 16(b)—i.e., "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Cf.* § 3559(c)(2)(F)(ii) (using virtually identical language to define a serious violent felony).[11] The Court explained that § 16(b) "simply covers offenses that *naturally* involve a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal*, 543 U.S. at 10, 125 S. Ct. at

_____

[11] Notably, § 3559(c)(2)(F)(ii) does not include the phrase "or property."

383 (emphasis added).

The *Leocal* Court emphasized that "[t]he 'substantial risk' in § 16(b) relates to the use of force, not to the possible effect of a person's conduct." *Id.* at 10 n.7, 125 S. Ct. at 383 n.7. The Court then compared the language of § 16(b) to the language of U.S.S.G. § 4B1.2(a)(2), which defines a "crime of violence" under the career offender provision of the U.S. Sentencing Guidelines.[12] *Id.* The Court concluded: "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct." *Id.* "Therefore, while driving under the influence created a risk of injury to others, it could not be

---

[12] The career offender provision of the Sentencing Guidelines defines a "crime of violence," in pertinent part, as "any offense . . . that . . . involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Despite their similarities, § 16 and, by extension, § 3559, are not co-extensive with the guideline. *See Leocal*, 543 U.S. at 10 n.7, 125 S. Ct. at 383 n.7 (comparing U.S.S.G. § 4B1.2 to 18 U.S.C. § 16(b)). First, U.S.S.G. § 4B1.2(a)(2) does not contain the same temporal limitation ("in the course of committing the offense") that the statutory provisions do. Second, U.S.S.G. § 4B1.2(a)(2) discusses the serious potential risk of physical *injury*, whereas § 3559(c)(2)(F)(ii) and § 16(b) require an *inherent* and substantial risk of physical *force*. In sum, § 3559(c)(2)(F)(ii) and § 16(b) cover a narrower category of offenses than U.S.S.G. § 4B1.2(a)(2).

Previously, we made broad generalizations such as "[t]here is no meaningful distinction between the language of the career offender guideline . . . and the language of § 3559 [and § 16(b)]." *United States v. Abraham*, 386 F.3d 1033, 1038 (11th Cir. 2004) (per curiam); *see also United States v. Ivory*, No. 06-10895, slip op. at 12 (11th Cir. Jan. 17, 2007) (per curiam); *United States v. Searcy*, 418 F.3d 1193, 1197 (11th Cir. 2005); *United States v. Rutherford*, 175 F.3d 899, 905 (11th Cir. 1999). A careful review of our case law and recent Supreme Court precedent, however, demonstrates that the offenses which § 3559(c)(2)(F)(ii) and § 16(b) cover are a subset of the offenses which U.S.S.G. § 4B1.2(a) covers. In other words, it is proper to argue cases under § 3559 or § 16 to prove cases under U.S.S.G. § 4B1.2, because every offense that qualifies under either of those two statutes will also qualify under the guideline, but the reverse tactic is not always appropriate. Accordingly, prior decisions regarding U.S.S.G. § 4B1.2 are not dispositive in this case.

characterized as a 'crime of violence' because any such risk was not the natural outcome of an illegal use of force." *Johnson*, 399 F.3d at 1301 (discussing *Leocal*).

We have previously stated that "[t]he teaching of *Leocal* requires us to ask whether the offense . . . categorically presents a substantial risk of violence [or physical force]." *Id.* at 1302. In *Johnson*, for example, we examined whether simple possession of a firearm by a felon fell under § 3156(a)(4)(B), which defines a "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[13] We concluded that "the connection between any possible risk created and the simple possession of a firearm by a felon is simply too attenuated to meet the definition set forth in § 3156(a)(4)(B)." *Id.* Similarly, any risk of force created by threatening a federal building with anthrax—e.g., arterial blood draws or general force used to evacuate and secure the building—is simply too attenuated to meet the definition of a serious violent felony set forth in § 3559(c)(2)(F)(ii). Because threatening a federal building with anthrax is not an offense "that, *by its nature*, involves a *substantial* risk that physical force against the person of another may be used *in the*

---

[13] We note that § 3156(a)(4)(B) uses language identical to 18 U.S.C. § 16(b). *See supra* note 11 and accompanying text.

*course of committing the offense*," § 3559(c)(2)(F)(ii) (emphasis added), the district court erred in finding that Evans' conviction under § 2332a(a)(3) constituted a serious violent felony for purposes of imposing a minimum mandatory life sentence.

We note, incidentally, that in 2004 (after Evans was indicted), Congress passed a statute entitled "False information and hoaxes," which specifically criminalizes the conduct at issue in this case—sending an anthrax hoax letter.[14] *See* 18 U.S.C. § 1038. If neither serious bodily injury nor death occurs as a result of the hoax, as was the case here, the maximum term of imprisonment under the new statute would be five years. *See* § 1038(a)(1)(A). Consequently, a conviction for sending an anthrax hoax letter under § 1038(a)(1)(A) would not qualify as a serious violent felony for § 3559 enhancement purposes because it is not one of the enumerated felonies in § 3559(c)(2)(F)(i) nor is it an "offense punishable by a maximum term of imprisonment of 10 years or more," § 3559(c)(2)(F)(ii). The passage of § 1038 suggests that where serious bodily injury or death does not

_____

[14] The statute reads, in pertinent part:
Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of [various U.S. Code sections, including those criminalizing the use of biological, chemical, or nuclear weapons,] shall be fined . . . or imprisoned *not more than 5 years*, or both [if death or serious bodily injury does not result].

§ 1038(a)(1) (emphasis added).

21

occur, Congress did not intend that a conviction for sending an anthrax hoax letter could result in life imprisonment.

### III. Conclusion

For the foregoing reasons, we affirm Evans' conviction, but vacate his sentence as to Count One and remand for resentencing because the district court improperly applied the 18 U.S.C. § 3559 enhancement. A conviction under 18 U.S.C. § 2332a(a)(3) for threatening to use anthrax against federal property does not qualify as a "serious violent felony" within the meaning of § 3559(c)(2)(F).

**AFFIRMED, IN PART; VACATED AND REMANDED, IN PART.**